People of the State of Illinois, Defendant in Error, v. Martin Shapiro, Plaintiff in Error.

Gen. No. 40,295.

Opinion filed March 29, 1939.

GRENVILLE BEARDSLEY, of Chicago, for plaintiff in error.

THOMAS J. COURTNEY, State's Attorney, for defendant in error; EDWARD E. WILSON, JOHN T. GALLAGHER, MELVIN S. REMBE and BLAIR L. VARNES, Assistant State's Attorneys, of counsel.

MR. PRESIDING JUSTICE DENIS E. SULLIVAN delivered the opinion of the court.

This cause comes before us on a writ of error from the municipal court wherein the defendant was found guilty of attempting by false pretenses to obtain $200 from Riverview Park Company, of doing overt acts in furtherance thereof and having failed and been intercepted in such attempt.

Motions for a new trial and in arrest of judgment were overruled and the defendant Martin Shapiro was sentenced to jail for six months.

The theory of the case on behalf of the People is that defendant falsely, fraudulently and designedly represented to officers of Riverview Park Company that the claim for damages for personal injuries of one Sylvester Bialkowski was false and fraudulent, in that Bialkowski pretended to suffer from an injured spine, but had only been shaken up and bruised in an accident and to make it appear his injuries were serious had been taken to a hospital and placed in a plaster cast, that in reliance upon these representations the officers of the park gave $200 to the defendant, who put the money in his pocket and started to leave the office of the company; that he was arrested as he left the office, and the said money taken from him.

Defendant's theory is that when, in reliance upon his representations, officers of Riverview Park Company handed $200 to him and he placed the money in his pocket and walked away, defendant was guilty of either obtaining money by false pretenses or of no offense, depending upon the truth or falsity of his representations; that the vital element of failure, interception and prevention was not proven and is completely disproved by the evidence; that his trial was unfair, the record disclosing that he was prejudiced in his substantial rights by unfair questions and statements of the assistant State's attorney who prosecuted the case, and by erroneous rulings of the trial judge.

As to the evidence presented, there does not seem to be much difference between the position taken by the State and the defendant. Plaintiff's brief states that three police officers arrived at the Riverview Park Company offices prior to 2:30 p. m. on January 11, 1938, Sergeant Hannigan stayed in Mr. Botts' office; that Mr. Botts is controller of the company; that the

other officers went into the next office where there was a thin partition between; that defendant came to Botts' office at about 2:45 p. m. and Eckert introduced him to Botts and Hannigan and told them what the defendant had proposed; that defendant said he had talked to Eckert about the $75,000 case by Bialkowski and that he had some information that might be of value; that defendant said he wanted $200, that it was worth more, but that he would leave it up to them. Botts told him he didn't know whether they wanted to give him anything for the information because his story might not be true. Defendant said, "I will take a chance on telling you the story." Defendant then related how, the morning after the accident at Riverview Park he took a list of those alleged to have been injured; that he called on Bialkowski at his work, as investigator, and that night took him to the Will Rogers Memorial Hospital. Bialkowski was put to bed and treated for back injuries in the six room suite they had in the hospital, under the charge of Dr. Kushner, where accident cases were to be built up. Bialkowski was put in a cast for five or six weeks although the X-ray showed no fracture of any kind and when the cast was removed Bialkowski slept with a nurse from whom he contracted gonorrhea, which produced "all kinds of bladder or kidney complications." He further told them that although the X-ray showed there was no back fracture they were going to claim there was; that one Jackson was to get a third of any judgment procured and the hospital, the boy, and he, defendant, were to each get a sixth; that he, the defendant, told Bialkowski that there probably would be $5,000 in it if the case was built up, to which the boy agreed. After they argued back and forth about the price, Botts went to the vault and came out with $200 in five dollar bills, the funds of the Riverview Park Company, which he gave to the defendant in the belief that what he told

him was correct. Botts testified he intended that defendant should keep the money.

When defendant was about to leave, Officer Hannigan gave a signal to the other officers and they came in from the other room where they were listening to the proceedings and arrested the defendant and took the money away from him.

The only question presented for our consideration is whether or not the complaint which charged an attempt to obtain money under false pretense, is sustained by the proof of actually obtaining the money, which made it a completed transaction.

The evidence shows that defendant obtained the money, put it in his pocket and the police officers testified that they took it away from him after he had accepted it and had put it in his pocket and was walking away.

The case of *People v. Lardner*, 300 Ill. 264, cited by the People does not seem to sustain their contention. In that case it was said:

''The rule that a defendant may be convicted of a lesser offense which is included in an indictment for a greater crime cannot be applied to sustain a conviction for an attempt to commit larceny with which the defendant was charged where the evidence shows that the offense was complete, as the statute defines what constitutes. an attempt and includes as an essential element the failure to consummate the crime.

''If one feloniously takes the goods of another from their accustomed place, although he is detected before they are actually carried away, the crime of larceny is complete, and where a shoplifter, after taking goods from a show-case and putting them in his overcoat pocket, runs away, leaving his overcoat lying on another show-case, the crime is larceny though his possession was brief and the goods were not removed from the store.''

In the instant case the offense of obtaining money under false pretenses was complete when the money was obtained, put in defendant's pocket and reduced to his possession, and as the Supreme Court said in the case of *People v. Miller,* 278 Ill. 490, at page 505: "As used in both statutes the word 'obtain' means to get hold of; to gain possession of or to acquire. Under the Confidence Game statute the offense consists of the getting hold of or gaining the possession of money or property by means of some trick or device or swindling operation in which advantage is taken of the confidence of the victim reposed in the swindler. . . . Under the False Pretense statute, whoever, with intent to cheat or defraud, shall designedly, by color of any false token in writing, or by any other false pretense, obtain from any person any money or personal property is guilty of obtaining money or property by false pretenses."

It therefore follows that, under the law, evidence proving a completed transaction of obtaining money under false pretenses, does not support a charge of attempted obtaining money under false pretenses, as is charged in the complaint. The conviction cannot stand and the judgment is hereby reversed.

*Judgment reversed.*

HEBEL and BURKE, JJ., concur.